FILED
JAN 2 1 2010

UNITED STATES DISTRICT COURT

THE DISTRICT OF OREGON

PORTLAND DIVISION

CAROLINE C. PEREZ and MARIA T. PEREZ, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

DEL MONTE FRESH PRODUCE N.A., INC., a Florida Foreign Business Corporation,

Defendant.

CV. 09-1194-AC

FINDINGS AND RECOMMENDATION

---

ACOSTA, Magistrate Judge:

*Findings and Recommendation*

Caroline C. Perez and Maria T. Perez filed this action in state court on behalf of themselves and similarly situated individuals (collectively "Plaintiffs") against their past employer Del Monte Fresh Produce ("Del Monte") for violation of wage and hour laws and breach of contract. Del Monte

removed the action to this court. Presently before the court is Plaintiffs' motion to remand. The court finds that Del Monte has failed to present evidence establishing by a preponderance of the evidence that the damages alleged exceed either the $75,000 amount in controversy required under 28 U.S.C. § 1332(a) or the aggregate $5,000,000 amount in controversy required under 28 U.S.C. § 1332(d). Accordingly, Plaintiffs' motion to remand should be granted and request for attorney fees denied.

*Background*

Plaintiffs filed their original class action complaint in the Circuit Court of the State of Oregon for the County of Multnomah on June 17, 2009 ("Complaint"). (Notice of Removal, Exh. 1.) In the Complaint, Plaintiffs defined the class as "persons who worked at Del Monte's produce packing plant in Portland, Oregon, during the period from after June 12, 2007, through the date of filing this action; and for those employed thereafter with respect to any violation of wage and hour law alleged herein, until such time as Del Monte complies with the law," and further alleged that plaintiffs were "minimum wage or close to minimum wage workers." (Notice of Removal, Exh. 1 at ¶¶ 6, 8.) Plaintiffs alleged that Del Monte breached Oregon's wage and hour laws by failing to pay them for preparatory and concluding activities, such as "time spent locating, obtaining, donning, doffing, and returning their uniforms and protective equipment," failing to provide uninterrupted meal periods, and failing to provide paid, uninterrupted ten-minute rest periods for each four hours worked. (Notice of Removal, Exh. 1, ¶ 5.) As a result of these violations, Del Monte allegedly underpaid each of the Plaintiffs by at least thirty minutes for each full day of work, failed to pay overtime to plaintiffs who worked more than 10 hours per day or more than 40 hours per week, and breached a settlement agreement entered into in late July 2006, in which Del Monte agreed to comply with state

law in all of the above particulars ("Settlement Agreement"). (Notice of Removal, Exh. 1.) Plaintiffs sought a declaration that Del Monte had violated wage and hours laws, and the settlement agreement; an injunction prohibiting Del Monte from engaging in such violations in the future; and reasonable costs and attorney fees. (Notice of Removal, Exh. 1.)

Del Monte moved to dismiss the Complaint asserting that Plaintiffs had failed to join a necessary party. (Notice of Removal, Exh. 3 at 1.) Del Monte argued that they were not the employers of Plaintiffs and therefore, not liable for the violations of the wage and hour laws. (Notice of Removal, Exh. 3 at.4) Del Monte represented that "Plaintiffs are presumed to have been employed by Real Time Staffing Services, Inc., dba Select Staffing" ("Select Staffing") and offered in support of this representation a Temporary Worker Agreement between Del Monte and Select Staffing dated June 18, 2007, and effective for a year term ("Worker Agreement"). (Notice of Removal, Exh. 3 at 6, 12.) Attached as an exhibit to the Worker Agreement was a list of worker classifications and related bill rates. The regular time bill rates with a 1.32 markup ranged from $10.39 for a production worker to $13.53 for a sanitation III worker, which represents an hourly wage range of $7.87 to $10.25. (Notice of Removal, Exh. 3 at 20.)

On July 23, 2009, Plaintiffs filed an amended complaint ("Amended Complaint"). (Notice of Removal, Exh. 3 at 24.) Plaintiffs dropped their claims based on Del Monte's failure to provide uninterrupted ten-minute rest periods except with regard to the breach of the Settlement Agreement, deleted their allegations that Plaintiffs are minimum or close to minimum wage workers and the inclusion of all future employees in the class, and added claims for damages for unpaid wages (including overtime, minimum and wrongfully deducted wages), statutory damages, and contract damages. (Notice of Removal, Exh. 3 at 24-32.) Del Monte moved to dismiss the Amended

Complaint for failure to state ultimate facts sufficient to constitute a claim without waiving any of its prior motions. (Notice of Removal, Exh. 3 at 97.)

On September 4, 2009, Plaintiffs moved for leave to file a second amended complaint ("Second Amended Complaint') which set forth, with specificity, the amount of damages sought by the Plaintiffs. (Notice of Removal, Exh. 3 at 122.) Caroline Perez, who worked for Del Monte from March 2008 to July 2008, and February 2009 to April 2009, sought damages not to exceed $1,344.96 in overtime wages with a related penalty of $3,996.00; damages not to exceed $704.20 in unpaid minimum wages with a related penalty of $3,996.00; damages not to exceed $896.40 in unpaid wages on her failure to pay wages claim; damages not to exceed $2,943.76 in unpaid wages for the breach of the Settlement Agreement; and damages not to exceed $560.25 in wrongfully deducted wages. Maria Perez, who worked for Del Monte from July 2007 to March 2009, sought damages not to exceed $4,789.00 in overtime wages with a related penalty of $2,160.00; damages not to exceed $105.60 in unpaid minimum wages with a related penalty of $2,160.00; damages not to exceed $3,193.20 in unpaid wages on her failure to pay wages claim; damages not to exceed $8,088.60 in unpaid wages for the breach of the Settlement Agreement; and damages not to exceed $2,025.00 in wrongfully deducted wages. (Notice of Removal, Exh. 3 at 122-134.)

Plaintiffs' counsel forwarded a copy of the motion and the Second Amended Complaint to legal counsel for Del Monte on Friday, September 4, 2009, at 1:21 p.m. (Griffin Decl. Exh. A.) On October 8, 2009, Del Monte removed this action to federal court asserting diversity jurisdiction under 28 U.S.C. § 1332 and attaching a copy of the Complaint ("Notice"). In the Notice, Del Monte represented that it received a copy of the motion and the Second Amended Complaint on September 10, 2009. (Notice of Removal ¶ 5.) On October 23, 2009, Del Monte filed an Amended Notice of

Removal ("Amended Notice") asserting the Class Action Fairness Act of 2005 (28 U.S.C. §1332(d))(the "Act") as an additional ground for federal jurisdiction and representing that the Amended Notice was filed within thirty days of discovering the number of putative class members. (Am. Notice of Removal ¶¶ 6, 8.) Plaintiffs filed their motion to remand on November 6, 2009.

*Legal Standard*

28 U.S.C. § 1447(c) provides:

> If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded. An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal.

The removal statute is strictly construed and any doubt about the right of removal is resolved in favor of remand. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). The presumption against removal jurisdiction means "the defendant always has the burden of establishing that removal is proper." *Id.* This same burden applies to class actions removed to federal court under the terms of the Act. *Abrego Abrego v. The Dow Chemical Co.*, 443 F.3d 676, 686 (9th Cir. 2006).

*Discussion*

A. Diversity Jurisdiction under 28 U.S.C. § 1332(a)

28 U.S.C. §1332(a) authorizes district courts to exercise original jurisdiction over civil actions in which the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and the parties are citizens of different states. Plaintiffs argue that the $75,000 sum or value requirement is not met in this instance.

In an action involving more than one plaintiff, the federal courts have diversity jurisdiction "where the other elements of jurisdiction are present and at least one named plaintiff in the action

satisfies the amount-in-controversy requirement." *Exxon Mobil Corp. v. Allapattah Services, Inc.*, 545 U.S. 546 (2005). If a complaint does not specifically allege an amount in controversy, a defendant opposing a motion to remand must prove by a preponderance of the evidence, or that it is more likely than not, that the amount in controversy exceeds the $75,000 jurisdictional threshold. *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 701 (9th Cir. 2007)(district court properly applied a preponderance of the evidence standard where the complaint alleged that each plaintiff's damages were less than $75,000 but the prayer for relief did not include a total dollar amount in controversy and sought several forms of relief in addition to damages); *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996)("Under this burden, the defendant must provide evidence that it is 'more likely than not' that the amount in controversy" satisfies the federal jurisdictional amount requirement.) When the amount in controversy is not facially apparent from the allegations in the complaint, the court may look to the facts alleged in the removal petition or summary judgment-type evidence submitted by the parties to determine whether the jurisdictional requirement was met at the time of removal. *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004). "[R]emoval 'cannot simply be based on conclusory allegations.'" *Singer v. State Farm Mut. Auto Ins.*, 116 F.3d 373, 377 (9th Cir. 1997)(*quoting Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995). If a plaintiff seeks punitive damages and statutorily authorized attorney fees in addition to actual damages, the court may consider all three in determining the amount in controversy. *Bell v. Preferred Life Assur. Soc. of Montgomery, Ala.*, 320 U.S. 238, 240 (1943)("Where both actual and punitive damages are recoverable under a complaint each must be considered to the extent claimed in determining jurisdictional amount."); *Galt G/S v. JSS Scandavia*, 142 F.3d 1150, 1156 (9th Cir. 1998)("[W]here an underlying statute authorizes an award of

attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy.").

The Second Amended Complaint, which prompted the removal of the action to this court, incorporates specific allegations of unpaid wages, including overtime, minimum and wrongfully deducted wages, penalty wages, and contract damages, for each of the named plaintiffs. Caroline C. Perez, who worked for Del Monte approximately seven months during the relevant period at an hourly rate of $16.65[1], claims damages totaling $14,439.77. Maria T. Perez, who worked for Del Monte approximately twenty months during the relevant period at a hourly rate of $9.00, claims damages totaling $22,521.40. Plaintiffs seek, and appear to be entitled to, attorney fees on all claims except the breach of contract claim. Accordingly, if Del Monte has established by a preponderance of the evidence that Plaintiffs will incur more than $52,478.60 in attorney fees prosecuting this action, the amount-in-controversy requirement has been met.

The sole evidence offered by Del Monte in support of its assertion that Plaintiffs will incur more than $52,480 in attorney fees is the statement in its memorandum in opposition to the motion to remand that "[b]ased on these alleged damages for the two named plaintiffs, and based on Del Monte's experience in litigating a similar case involving many of the same claims, see Motion at p. 3, Del Monte determined that it was more likely than not that the amount in controversy, including attorneys' fees, for each named Plaintiff exceeds the jurisdictional threshold." (Def.'s Mem. in Opp'n. to Pls.' Mot. to Remand at 9.) Del Monte then references paragraph five of the Declaration of Brad Stanford.

---

[1]The wage rate was calculated by dividing the penalty wage requested by thirty days and then by eight hours.

The court assumes that Del Monte is citing to page three of Plaintiffs' motion to remand where Plaintiffs discuss a state court class action against Del Monte in which the jury found, on October 1, 2009, that "Del Monte was the employer of workers at its North Portland produce plant and that it had engaged in a custom or practice of wage and hour violations." (Pls.' Mem. in Supp. of Mot. to Remand at 3). There is no evidence of the amount of attorney fees incurred by the plaintiffs in that action. Paragraph five of declaration of Brad Stanford offered in support of the Amended Notice discusses the number of employees employed by Select Staffing during the relevant period and Del Monte's assertion that the damages sought by the class members, plus attorney fees, exceeds the 5,000,000 jurisdictional amount required under the Act.

The evidence offered by Del Monte, which consists solely of a representation that, based on past experience, Plaintiffs' will incur attorney fees in excess of $52,480 in litigating their claims, is not sufficient to prove by a preponderance of the evidence that either of the named plaintiffs meet the $75,000 jurisdictional requirement. Other evidence before the court establishes that Del Monte employees pursued virtually identical claims against their employer twice in the last three to four years and that Del Monte either settled similar wage and hour claims in the Settlement Agreement resolving the class action entitled *Simon-Zarate v. Del Monte Fresh Produce*, or was found liable by a jury on October 1, 2009 for violations of state wage and hour laws in *Cortez Liborio v. Del Monte Fresh Produce*. In the Settlement Agreement, class counsel for the employees represented that they incurred a total of $44,558 in attorney fees, expenses, and distribution costs in prosecuting the class action. (Notice of Removal, Exh. 3 at 40.) It is unclear from the record the extent to which this class action was litigated or the number of hours expended by class counsel in prosecuting this action. However, it would appear that, after deleting reasonable expenses and distribution costs,

class counsel successfully litigated this matter for less than $40,000. The same issues involving the Del Monte were again litigated successfully through a jury trial in late 2009. It is again unclear from the record the number of hours expended by class counsel in the *Cortez Liborio* action or whether Plaintiffs' counsel were involved in that action. What is clear from these cases is that the violations alleged in this action have been litigated to a successful resolution more than once in the recent past and that the experience gained and rulings achieved in the prior actions will aid the lawyers in litigating this action. This fact is likely to reduce the attorney fees Plaintiffs will incur in this action, which further undermines Del Monte's attorney fee argument.

In the absence of evidence supporting Del Monte's assertion and the presence of evidence that Plaintiffs' counsel should be able to litigate this action efficiently based on the experience gained in the prior actions, the court can not say that it is more likely than not that the Plaintiffs will incur more than $52,480 in attorney fees litigating this action to fruition and bring either named plaintiff to the required $75,000 amount in controversy. It is even less likely that either named plaintiff will incur the necessary amount of attorney fees if the total amount of the fees is divided and allocated equally to each named plaintiff. Del Monte has failed to establish, by a preponderance of the evidence, that the jurisdictional amount-in-controversy requirement has been met.

In a footnote, Del Monte asks the court for limited discovery regarding the amount of attorney fees in the event Plaintiffs wish to dispute the amount. While the Ninth Circuit has recognized that some courts have suggested "it may be appropriate to allow discovery relevant to jurisdictional amount prior to remanding," it has explicitly held that such discovery is not required, and that deference to the trial court is appropriate, in the absence of a showing of actual and substantial prejudice. *Abrego*, 443 F.3d at 692 (citing *Gibson v. Chrysler Corp.*, 261 F.3d 927, 948

(9th Cir. 2001)). The court is convinced that even with discovery and in light of the prior litigation, Del Monte would not be able to meet its burden. Del Monte's request for discovery should be denied.

B. Diversity Jurisdiction under 28 U.S.C. § 1332(d)

In the Amended Notice, Del Monte asserts the Act as an alternative basis of subject matter jurisdiction. The Act provides, in pertinent part, that:

> The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which --
>
> (A) any member of a class of plaintiffs is a citizen of a State different from any defendant.

28 U.S.C. § 1332(d)(2). The Act further provides that "[i]n any class action, the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs. 28 U.S.C. § 1332(d)(6). The same preponderance of evidence standard applies to complaints that do not specify a particular amount in controversy in actions that have been removed to federal court under the Act. *Abrego*, 443 F.3d at 683.

Del Monte asserts that the plaintiffs and defendants are citizens of different states, the aggregate amount in controversy exceeds $5 million, and the number of members of all putative subclasses exceeds 100 individuals. Plaintiffs dispute only the valuation of the aggregate amount in controversy.

In support of its position, Del Monte represents that it discovered that the amount in controversy more likely than not exceeded $5,000,000 when it learned from Select Staffing how

many individuals it had employed and assigned to Del Monte's plant. Del Monte contends that even if the 1,800 individuals working at the Del Monte plant during the relevant were entitled to only the two statutory penalties totaling $3,744 per employee, the aggregate amount in controversy equals $6,739,200, well in excess of that required under the Act.

In fact, the evidence presented to the court indicates that Del Monte learned only that "Select Staffing employed more than 1,800 people during the alleged class period." (Stanford Decl. ¶ 5.) Select Staffing is a California corporation that appears to provide employees to businesses in addition to Del Monte. While the evidence establishes that Select Staffing employed more than 1,800 people during the relevant period, there is no indication of how many of those employees worked at the Del Monte plant. Additionally, there is no evidence of how long each of the Select Staffing employees worked at the Del Monte plant or whether those employees were full-time or part-time. Finally, there is no evidence how much each of the Select Staffing employers were paid. All of this uncertainty prevents the court from finding that it is more likely than not that the aggregate amount in controversy exceeds $5,000,000.

Even if all 1,800 Select Staffing employees were assigned to the Del Monte plant, the lack of information about both the status of the workers as part-time or full-time employees affects the determination of the total amount in controversy. Del Monte appears to ask the court to assume that all 1,800 employees work full time and would be entitled to recover damages under all of the claims asserted in the Second Amended Complaint. However, the evidence does not support this assumption.

The First Claim for Relief asserts a claim for failure to pay overtime to class members working more than ten hours per day or forty hours per week. Any part-time employee would, more

likely than not, fail to qualify for the recovery of overtime wages or the penalties based on the failure to pay such overtime wages.

Del Monte appears to also ask the court to assume that all 1,800 employees were paid at or close to minimum wage despite the fact that it appears Plaintiffs' deleted an allegation to that effect in the First Amended Complaint. Again, the evidence does not support this assumption. Only those employees who were paid at or close to minimum wage would be entitled to recover either unpaid minimum wages or statutory damages related thereto under the Second Claim for Relief.[2]

Finally, in addition to the hours each employee worked per day and the hourly rate they were paid, the length of time they worked at the Del Monte plant will affect the amount of unpaid or illegally withheld wages they will be entitled to as damages, as well as the amount of contract damages they would be entitled to for breach of the Settlement Agreement. Del Monte has failed to present any evidence on how long each of the Select Staffing employees worked at the Del Monte plant.

Del Monte argues that because the Second Amended Complaint refers to the claims of the named plaintiffs as "typical of the claims of the class," the court should not look beyond the face of the complaint and merely multiply the number of class members by the amount of damages the named plaintiffs are seeking. However, the "typicality" of claims in a class action relates to the underlying source of the claim, not the dollar amount of the damages. "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by

---

[2]In fact, the court questions whether Caroline C. Perez, who appears to have been paid an hourly rate of $16.65, would be able to recover unpaid minimum wages or the corresponding statutory penalty.

the same conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)(internal quotation omitted). The Ninth Circuit does not "insist that the named plaintiff's injuries be identical with those of the other class members, only that the unnamed class member have injuries similar to those of the named plaintiffs and that the injuries result from the same, injurious, course of conduct." *Armstrong v. Davis*, 275 F.3d 849, 869 (9th Cir. 2001). The proper interpretation of the term typical in this instance is that all members of the class have been injured as a result of Del Monte's employment practices, not that all members of the class have been damaged to the same extent as the named plaintiffs.

The court finds that, based on the allegations in either the First or the Second Amended Complaint, and on the evidence currently before the court, it is impossible to know what the actual amount in controversy is at this time. It is clear that discovery is necessary to determine the number of employees affected by this action, the hours worked and the wages paid to each of these employees, and the length of time each worked at the Del Monte plant. Only after these questions have been answered will a clear picture of the aggregate damages sought in this action be revealed.[3]

C. Attorney Fees

Plaintiffs seek attorney fees pursuant to 28 U.S.C. § 1447(c). Under the statute "an order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). The Supreme Court recently took on the issue of when attorney fees should be awarded under § 1447(c). In *Martin v. Franklin Capital*

---

[3]Class actions are not subject to the one-year limitation for the removal of civil action from state court found in 28 U.S.C. § 1446(b). 28 U.S.C. § 1453(b). Consequently, should future discovery reveal that the aggregate of the class members' damage claims exceed $5,000,000, Del Monte may again remove the action to this court.

*Corp.*, 546 U.S. 132, 136 (2005), the Court held that "absent unusual circumstances, attorney's fees should not be awarded when the removing party has an objectively reasonable basis for removal."

Plaintiffs do not argue, and the court does not find, that Del Monte did not have objectively reasonable grounds to remove this action to federal court or that unusual circumstances exist. None of the Plaintiffs' complaints clearly alleged the amount in controversy and Del Monte became aware of evidence which supported a reasonable argument (and could later establish) that the amount in controversy exceeded the jurisdictional requirements. Plaintiffs' request for attorney fees should be denied.

*Conclusion*

Plaintiffs' motion (#11) to remand should be GRANTED and request for attorney fees should be DENIED.

Scheduling Order

The Findings and Recommendation will be referred to a district judge for review. Objections, if any, are due **February 5, 2010**. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 21st day of January, 2010.

JOHN V. ACOSTA
United States Magistrate Judge